UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF GEORGIA
AUGUSTA DIVISION

| DR. LESLEY WILLIAMS,<br><br>　　Plaintiff,<br><br>v.<br><br>BOARD OF REGENTS OF THE UNIVERSITY SYSTEM OF GEORGIA d/b/a AUGUSTA UNIVERSITY, et al.,<br><br>　　Defendants. | CASE NO. 1:20-cv-00100-JRH-BKE |
|---|---|

**PLAINTIFF'S RESPONSE IN OPPOSITION TO PHILLIP COULE, M.D.'S MOTION TO DISMISS COMPLAINT**

COMES NOW, Plaintiff, Dr. Lesley Williams, and hereby files PLAINTIFF'S RESPONSE IN OPPOSITION TO PHILLIP COULE, M.D.'S MOTION TO DISMISS COMPLAINT and incorporated brief, and shows the Court as follows:

**INTRODUCTION**

The Plaintiff, Dr. Williams, is a former resident in Augusta University's ("AU's") Department of Anesthesiology and Perioperative Medicine, also known as the Anesthesiology Residency Department ("ARD"). (Doc. 1-2, ¶ 2). In March of 2018, Plaintiff was a victim of sexual assault. (Doc. 1-2, ¶ 8). Afterwards, the Defendants in this matter began treating her differently than her male counterparts and retaliated against her when she complained, both formally and informally, of their actions. (Doc. 1-2, *passim*). For example, Plaintiff reported her program to ACGME for forcing her to delete case logs documenting residency requirements she

had actually performed. (Doc. 1-2, ¶ 15).[1] Plaintiff also complained of sex discrimination to AU's Office of Employment Equity. (Doc. 1-2, ¶ 132). The retaliation against Plaintiff culminated in Defendant Coule terminating her privileges to practice at Augusta University Medical Center, Inc. ("AUMC"). (Doc. 1-2, ¶ 139).

Defendant Coule terminated her privileges after the Defendants were unsuccessful in terminating her from the residency program. His action ultimately necessitated her termination from the residency program by virtue of her inability to practice at AUMC. (Doc. 1-2, ¶¶ 127-140). Plaintiff never demonstrated any work-related deficiencies, never endangered her patients, and passed the drug and fit for duty tests the Defendants unlawfully required her to take. (Doc. 1-2, ¶¶ 127-140). Still Defendant Coule, working in concert with other Defendants, questioned her ability—as a woman—to recover from a sexual assault and labeled her an alcohol abuser, a drug abuser, a danger to her patients, and unfit to practice medicine. (Doc. 1-2, *passim*).  The Defendants then terminated her from the residency program based on their discriminatory, baseless, and false characterizations. (Doc. 1-2, ¶¶ 139-140). The Defendants also communicated those falsehoods to other residency programs to which Plaintiff was seeking to transfer. (Doc. 1-2, ¶¶ 237-250). For these reasons, Plaintiff filed her Complaint against Defendant Coule, as an individual defendant, alleging violations of § 1983, libel, and slander. Plaintiff responds to Defendant Coule's motion to dismiss those claims against him as follows:

## STANDARD OF REVIEW

A motion to dismiss under Rule 12(b)(6) challenges the legal sufficiency rather than the truth of factual allegations, which are assumed true and construed most favorably to the plaintiff.

---

[1] The ACGME is the body responsible for accrediting all graduate medical training programs (i.e., internships, residencies, and fellowships) for physicians in the United States. (Doc. 1-2 ¶ 62). Her report to ACGME establishes protected activity for Plaintiff's Georgia Whistleblower Act retaliation claim.

*Hoffman-Pugh v. Ramsey*, 312 F.3d 1222, 1225 (11th Cir. 2002). The Trial Court's consideration of a motion to dismiss is restricted to the allegations in the Complaint, and may not properly rest on facts or assumed facts not fairly raised in the Complaint. *Morrison v. Amway Corp.*, 323 F.3d 920, 924 (11th Cir. 2003). See also *Ramos v. Goodfellas Brooklyn's Finest Pizzeria, LLC*, 2008 U.S. Dist. LEXIS 87368 (S.D. Fla. 10/15/2008) (At the motion to dismiss stage, under Fed. R. Civ. P. 12(b)(6), a court can only examine the four corners of a complaint.) "The threshold of sufficiency that a complaint must meet to survive a motion to dismiss for failure to state a claim is... 'exceedingly low." *Fin. Sec. Assur., Inc. v. Stephens, Inc.*, 500 F.3d 1276, 1282 (11th Cir. 2007), quoting, *Ancata v. Prison Health Servs., Inc.*, 769 F.2d 700, 703 (11th Cir. 1985). "A complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Id.* In deciding a motion to dismiss, the court must accept as true all the factual allegations in the complaint, drawing all inferences derived from those facts in the light most favorable to the plaintiff. *Brown v. Crawford County*, 960 F. 2d 1002, 1010 (11th Cir. 1992). "The issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." *Scheuer v. Rhodes*, 416 U.S. 232, 236, 94 S. Ct. 1683, 40 L. Ed. 2d 90 (1974); *Little v. N. Miami*, 805 F. 2d 962, 965 (11th Cir. 1986). Under *Bell Atlantic Corp. v. Twombly*, 127 S. Ct. 1955, 1965, 167 L. Ed. 2d 929 (2007), to survive a 12(b)(6) motion to dismiss, a complaint must contain factual allegations which are "enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true." A well-pleaded complaint will survive a motion to dismiss "even if it strikes a savvy judge that actual proof of these facts is improbable, and 'that a recovery is very remote and unlikely." *Twombly*, 127 S. Ct. at 19653.

A claim is plausible on its face "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. at 678 (citing *Twombly*, 550 U.S. at 556); *Gonzales v. Kay*, 577 F.3d 600, 603 (5th Cir. 2009); *Fields v. Dep't of Pub. Safety*, 911 F. Supp. 2d 373, 383 (M.D. La. 2012) (Jackson, J.).

## ARGUMENT AND CITATION TO AUTHORITY

A. PLAINTIFF HAS ALLEGED SUFFICIENT FACTS AND THERE IS SUFFICIENT DOCUMENTED EVIDENCE FROM WHICH A JURY COULD FIND THAT THE DEFENDANT COULE ACTED UNDER COLOR OF STATE LAW IN VIOLATING PLAINTIFF'S RIGHTS TO BE FREE FROM SEX DISCRIMINATION AND RETALIATION UNDER § 1983

Defendant Coule moved to dismiss Plaintiff's § 1983 Equal Protection claims against him arguing that Dr. Williams has not sufficiently pled facts that plausibly show that Dr. Coule acted "under the color of state law." (Phillip Coule, M.D.'S Brief in Support of Motion to Dismiss Complaint, DOC. 6-1, p. 3). Defendant Coule argues that AU Health System, Inc. ("AUHS") is a private entity and AU Medical Center, Inc. ("AUMC") is a "separately incorporated 501(c)(3) not for profit hospital that is in no way controlled by or part of the Board of Regents/Augusta University." (DOC. 6-1, p. 4). Defendant Coule further argues that he is being sued in his capacity as Chief Medical Officer of AUMC and that he was acting in that capacity when he terminated Plaintiff's hospital privileges. (DOC. 6-1, p. 5). Therefore, Defendant Coule's argument is, primarily, because AUMC is a private entity and he is being sued for acting in his capacity as an agent of that private entity, Plaintiff has not sufficiently pled state action to warrant § 1983 liability. Finally, addressing contracts between the Georgia Board of Regents ("BOR") and AUMC, communications between Defendant Coule and Defendants Meiler, Arthur, and Moore, and AU's termination of Plaintiff from the residency program due to his

termination of her privileges, Defendant Coule argues that there is not sufficient entanglement between AUMC and BOR for Plaintiff to establish state action. (DOC. 6-1, p. 4-6).

State action is a factually intensive inquiry as a mixed question of fact and law that is decided by the court and is reviewed de novo on appeal. See e.g. *Duke v. Smith*, 13 F.3d 388, 392 (11th Cir. 1994) (reviewing de novo the court's order on the issue of state action which is a mixed question of law and fact); *Brentwood Academy v. Tennessee Secondary School Athletic Association*, 531 U.S. 288, 298 (2001) (a determination as to whether an individual or organization has acted under color of state law is a "necessarily fact-bound inquiry,") (quoting *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 939 (1982)). "What is fairly attributable [to the government] is a matter of normative judgment, and the criteria lack rigid simplicity." *Brentwood Academy*, 531 U.S. at 295-96. Supreme Court cases on the subject "have not been a model of consistency," and have "no single test to identify state actions and state actors. Rather, there are a host of factors that can bear on the fairness of an attribution of a challenged action to the State." *Cooper v. U.S. Postal Serv.*, 577 F.3d 479, 491 (2d Cir. 2009). Therefore, as a fact intensive inquiry, the state action decision is better suited to post-discovery motions and application; nevertheless, Plaintiff has already sufficiently alleged and referenced evidence in her Complaint, which supports a finding by the Court and a jury that Dr. Coule was acting as an agent of the state even without the benefit of discovery. Based upon the allegations outlined in the Complaint and supported by documented evidence, this Court should deny Dr. Coule's Motion to Dismiss and find that Dr. Coule and AU Medical Center are collaterally estopped from arguing that they operate exclusively as a non-profit, private entity and therefore are not subject to suit.

First, AUMC corporate documents restrict AUMC's activities to those serving purposes contained therein and state that AUMC was formed for the exclusive benefit of performing the functions of, and "to carry out the purposes of the Medical College of Georgia." (AUMC Amended and Restated Articles of Incorporation, Article III, attached as Ex. 1).[2] AU is one of the member universities of the University System of Georgia, under direction of the BOR. AU was organized pursuant to the Board of Regents authority under Ga Const. 1983 Art. VIII, Sec. IV, Par. I(b); O.C.G.A Sec. 20-3-21 and O.C.G.A. 20-3-31, to manage and control the University System. Exercising this authority, Board of Regents incorporated AUMC (then, MCGHI) for the exclusive purpose of serving the Medical College of Georgia. The Board then exercised its authority under O.C.G.A § 20-3-61, to "lease" the hospital to MCGHI. Therefore, AUMC's express mission to act at the will of the State and jointly with the State.

Plaintiff's Complaint alleged this same clear nexus between AU, MCG, AUHS, and AUMC stating, "Augusta University operates the Medical College of Georgia ("MCG"), and the teaching hospital, Augusta University Medical Center ("AU Medical Center")…Augusta University Health System is a domestic not-for-profit corporation that manages the clinical operations associated with Augusta University's resident program…All Individual Defendants in this matter are currently employed by AU." (DOC. 1-2, ¶¶ 18-20). Plaintiff certainly alleged an agency relationship between AUMC and the State of Georgia, by and through AU and BOR. Furthermore, Plaintiff alleged that Defendant Coule managed her residency department, showing further entanglement with the State relevant to the specific adverse actions he took against her, to include but not limited to, suspending her privileges to practice at AUMC so that AU could terminate her education and she would not be able to complete her residency. (DOC. 1-2, ¶¶ 47,

---

[2] MCG Health, Inc. was formed October 5, 1994 and renamed to AU Medical Center, Inc. in 2016. The original articles of incorporation and the most recent amendments include this quoted verbiage.

139). Therefore, the record shows that Plaintiff alleged a sufficient connection between AUMC and the State.

Second, there is independent evidence of such a connection to make it plausible that, although AUMC claims to be a private entity, AUMC and Defendant Coule acted as agents of the State when Defendant Dr. Coule terminated the Plaintiff's privileges to practice medicine as a resident in Anesthesia and suspended all access to the AU Medical Center, Children's Hospital of Georgia, and AU Medical Associates by written letter on June 4, 2019. The letter which effectively led to the end of the Plaintiff's educational opportunities and career as an Anesthesiologist is signed by Dr. Coule, as the Chief Medical Officer, but it is noted on the end of the letterhead that he is the Associate Dean for Clinical Affairs, Medical College of Georgia. (Termination of Privileges Letter, attached as Ex. 2). The Medical College of Georgia is a division of the State that is operated by the Board of Regents. The mailing address on the Plaintiff's termination of privileges to practice letter states the same mailing address as the Medical College of Georgia, 1120 15th Street, Augusta, Georgia 30912.

In terminating the Plaintiff's privileges, Dr. Coule specifically states that "Information has recently come to our attention to cause concern for the safety of our patients under your care." (Ex. 2). Notably, the information that Dr. Coule is referring to is a letter dated the same day as his letter, June 4, 2019, from Defendants Steffen Meiler, MD and Mary Arther, MD, stating that "the Department of Anesthesiology and Perioperative Medicine has determined that it can cannot support Dr. Lesley Williams under its license for the purpose of training in the field of anesthesiology. . . [due]to a series of unprofessional transgressions that resulted in an irrevocable breach of trust." (Meiler and Arthur Letter to Dr. Coule, June 4, 2019, attached as Ex 3). Importantly, the letter goes on to list a series of transgressions allegedly committed by the

Plaintiff, and ends with "over the years, the department has successfully assisted several residents who have made mistakes in their career by providing professional help and a remediation plan that works for both the residents, our patients, and our department. Dr. Williams has consistently challenged the good will of the department and many of the department's actions and interventions to assist her. **She recently filed a formal claim of disability and gender discrimination with the University's Employment Equity Office."** Therefore, the evidence shows that Dr. Coule was aware of the Plaintiff's protected activity when he issued the letter to terminate her privileges to practice and continue with her education. A fact finder could could conclude that the Defendants, to include but not be limited to, Dr. Arthur and dr. Meiler can have no legitimate purpose to inform a non-state actor or entity that is not going to act at their direction of an employee's complaints of sex or disability discrimination.

As alleged in the Plaintiff's Complaint "Defendant Coule violated Dr. Williams constitutional right to be free from sex discrimination in employment by working in concert with Defendant's Dr. Meller, Dr. Moore, Dr. Arthur, and others to terminate her privileges at AU Medical Center so that Dr. Hess would have to reverse his decision to reinstate her to the residency program" as recommended by the ad hoc committee. (Doc. 1-2, ¶ 226). It is well-established that a private entity, even a private person, may engage in state action by acting as an agent of the State. See, e.g. *Skinner v. Railway Labor Exec. Assn*. 489 U.S. 602, 614 (1989)(The exclusionary rule of for unlawful Fourth Amendment searches applies to searches performed by civilians functioning as an "instrument or agent of the Government."); See, also *Coolidge v. New Hampshire* 403 U.S. 443, 487 (1971) ("The test [is whether the citizen] must be regarded as having acted as an instrument or agent of the state").

State action may be committed by a, purportedly, private entity where "(1) the state compelled the private party's conduct, (2) the private party acted jointly with a state, or (3) the private party fulfilled a role that is traditionally a public function performed by a state." *Baez v. JetBlue Airways*, 745 F. Supp. 2d 214, 221 (E.D.N.Y. 2010).  As alleged in the Complaint, without Dr. Coule's letter terminating the Plaintiff's privileges which was issued based upon the information submitted by those who are undeniably state actors, the Plaintiff would have been reinstated and back in the residency program.  AUHS, AUMC, AU, and BOR are so entangled that Plaintiff's allegations that Dr. Coule acted as an agent of the State go beyond mere plausibility.

Moreover, Defendant Coule admits that he terminated Plaintiff's hospital privileges, at least in part, due to communications between him and Defendants Meiler and Arthur. (Doc. 6-1, p. 8). To that end, Defendant Coule's admitted actions are the type that the Eleventh Circuit found would be actionable in the precedent relied upon by Defendant Coule. (Doc. 6-1, p. 4) (quoting *Patrick v. Floyd Med. Ctr.*, 201 F.3d 1313, 1315 (11th Cir. 2000)). In *Patrick*, the Eleventh Circuit found that the "denial of . . . clinical privileges . . . was solely [the private hospital's] action and that this action could not be fairly attributed to [the public hospital authority]" because "the record shows that [the private hospital] acted pursuant to recommendations of its own agents[.]" 201 F.3d at 1316-1317 (dismissing Patrick's claims on summary judgment). Here, by contrast, taking the allegations of the Complaint as true and the documented evidence which the Defendant knows exists, Defendant Coule acted pursuant to the recommendations of Defendants Meiler and Arthur, who were state agents, and not those of his own private entity.   (Doc. 6-1, p. 8; Doc. 1-2, ¶14).

Lastly, and perhaps most importantly, it is plausible that AUMC is a state actor as Plaintiff has alleged in her Complaint because as recently as 2018, AUMC, by and through the Attorney General of the State of Georgia, while acting as AUMC's attorney, claimed to the United States District Court for the Northern District of Georgia that AUMC is a unit of BOR. In a Motion to Dismiss filed in Case No. 4:18-cv-00192-HLM, AUMC claimed:

> AU Medical Center is a hospital in Augusta operated by AU Health. AU Health and GCHC are themselves subdivisions of AU. AU is a unit of the University System of Georgia. None of these is capable of being sued. "The government, control, and management of the University System of Georgia and all of the institutions in said system shall be vested in the Board of Regents of the University System of Georgia."

(Brief of Defendants the State of Georgia, Georgia Correctional Healthcare, Augusta University, Augusta University Health, Augusta University Medical Center, Nichols, Lewis, Mcdade, Burke, Lee, Melton, Ballinger, Stroh, And Keith In Support of Their Motion to Dismiss, Case No. 4:18-cv-00192, Doc. 45-1, p. 2-3, attached hereto as Ex. 4). AUMC further claimed it was entitled to Eleventh Amendment immunity as an arm of the state. (Ex. 4, p. 4-5). The Motion was signed by the Attorney General and three assistant Attorneys General as "Attorneys for Defendants GCHC, AU, AU Health, AU Medical Center, Nichols, Lewis, McDade, Burke, Lee, Melton, Ballinger, Stroh, and Keith." (Ex. 4, p. 25). Furthermore, in granting the motion to dismiss, the Court agreed with AUMC's argument stating, "The Court agrees that Defendants AU, AU Health, and AU Medical Center are units of the University System of Georgia, and that the proper Defendant for claims against those entities is the Board of Regents of the University System of Georgia." (Order, Case No. 4:18-cv-00192, Doc. 68, p. 60, attached hereto as Ex. 5). The Court further noted that pursuant to O.C.G.A. §§ 45-15-30, 45-15-34, 45-15- 35, the Georgia Department of Law would not represent a private entity. (Ex. 5, p. 62-63). In this matter, Plaintiff has alleged, and supported her allegations through extrinsic evidence this Court may consider, that AUMC is

an arm of the State and that Defendant Coule acted as an agent of the State. Therefore, Defendant Coule's motion to dismiss Plaintiff's § 1983 claims on the grounds that as a matter of law he can't be considered a state actor should be denied.

B. <u>PLAINTIFF HAS ALLEGED SUFFICIENT FACTS AND THERE IS DOCUMENTED EVIDENCE TO SUPPORT A FINDING BY A JURY THAT DEFENDANT COULE VIOLATED PLAINTIFF'S CLEARLY ESTABLISHED CONSTITUTIONAL RIGHTS TO BE FREE FROM SEX DISCRIMINATION AND RETALIATION AND HE IS THEREFORE NOT ENTITLED TO QUALIFIED IMMUNITY FOR PLAINTIFF'S § 1983 CLAIMS AND DISCOVERY SHOULD COMMENCE</u>

Defendant Coule claims, in the alternative, that if he acted under color of state law, he is entitled to qualified immunity because his conduct did not violate a clearly established right of Plaintiff. (Doc. 6-1, p. 7). "[Q]ualified immunity protects 'all but the plainly incompetent or those who knowingly violate the law.'" *Malley v. Briggs*, 475 U.S. 335, 341 (1986). At the pleading stage, Plaintiff is only required to allege plausible violations of clearly established rights, but does not have to establish the truth of those allegations. Notably, in his motion to dismiss, Defendant Coule does not deny that Plaintiff alleged clear violations of her constitutionally protected rights, but instead, argues that his actions, in true, were motivated for other, reasonable considerations. Defendant Coule's motion focuses only on ¶138 of Plaintiff's Complaint and ignores all of the numerous allegations that support a finding that Defendant Coule conspired with other Defendants to violate the clearly established rights of the Plaintiff.

Plaintiff alleged that male residents engaged in worse behavior than she was alleged to have engaged in, to include, sexual harassment, engaging in sexual intercourse at work, and leaving pornographic material in plain view of others, but Defendant Coule did not suspend their privileges to practice at AUMC. (Doc. 1-2, ¶ 110-111). Plaintiff alleged that Defendant Coule engaged in disparate treatment in violation of her "constitutional right to be free from sex

discrimination in employment." (Doc. 1-2, ¶¶ 217, 226). Finally, Plaintiff alleged that Dr. Coule violated her clearly established right to be free from retaliation "for engaging in protected activity under the GWA, the ADA, and Title IX." (Doc. 1-2, ¶ 14).

Defendant Coule's termination of Plaintiff's privileges to practice was an adverse action that the Defendants Meiler, Stefan, and Arthur, failed to obtain through the regular process because Dr. Hess chose to reinstate her based upon the ad hoc committee's recommendation. The question at the stage of a motion to dismiss should not rest on an evaluation of the Defendant's alleged legitimate non-discriminatory reason for his adverse action, particularly when there is clear evidence of notice of the protected activity, and a short nexus in time for the adverse action.  In  that letter, Defendants Meiler and Arthur stated, "[Plaintiff] has recently filed a formal claim of disability and gender discrimination with the University's Employment Equity Office." (Ex. 3, p. 4) The issue for a motion to dismiss is the plausibility and not the credibility of Plaintiff's allegations. Plaintiff has plausibly alleged and discovery may further show that Defendant Coule knew of Plaintiff's rape and subsequent protected activity and terminated her hospital privileges, in a knowing violation of her clearly established rights, as an act of discrimination and retaliation against her. Consequently, Defendant Coule's motion to dismiss Plaintiff's § 1983 claims on the basis of qualified immunity should be DENIED.

C. <u>PLAINTIFF HAS SUFFICIENTLY ALLEGED DEFENDANT COULE DISCRIMINATED AGAINST HER ON THE BASIS OF SEX.</u>

Defendant Coule's argument in favor of dismissing Plaintiff's sex discrimination claim conflates plausibility with credibility. As discussed above, Plaintiff has alleged numerous facts and instances where Defendant Coule acted alone or in concert with others to deprive her of her Constitutional rights. Her allegations go well beyond mere threadbare assertions to include

specific allegations or particular facts. Without repeating those allegations already discussed above and cited by Defendant Coule (Doc. 1-2, ¶¶ 210-233), Plaintiff has alleged animus on the part of Defendant Coule, which undermines his argument that he engaged in neutral and detached, rational decision-making in choosing to terminate her hospital privileges. In fact, Plaintiff alleged that Defendant Coule disclosed and mischaracterized her confidential medical information to unauthorized persons in violation of his ethical duties as her treating physician. (Doc. 1-2, ¶¶ 75-77, 237-240, 244-250). Of course, Defendant Coule denies any such disclosure; however, the credibility of her allegations is not at issue. It is plausible, as she alleged, that he treated her, that she disclosed information to him in confidence, that said information was misrepresented and disclosed to others, and that information was then used to harm her career and her reputation. It is likewise plausible that if Defendant Coule would violate her confidentiality as a patient, he would violate her other rights. Notably, Defendant Coule simultaneously denies disclosing said information while also offering that information as justification for terminating her hospital privileges nearly a year after treating Plaintiff.

In addition, as alleged in Plaintiff's Complaint, former Interim Chief Compliance Officer of Augusta University, John Lott, complained of "illegal searches and drug testing, ADA violations, and Title 9 violations" related to Plaintiff. (Doc. 1-2, ¶¶ 149-158). Plaintiff has sufficiently alleged facts to support a claim of sex discrimination, fabricating justifications for said discrimination, and retaliation by Defendant Coule, and only discovery will reveal to what extent these allegations will be further supported by other competent evidence.  Therefore, Plaintiff submits that Defendant Coule's motion to dismiss on this ground should be denied.

D.  PLAINTIFF HAS SUFFICIENTLY PLED LIBEL AND SLANDER AGAINST DEFENDANT COULE.

Defendant Coule moves to dismiss Plaintiff's claims for libel and slander (collectively, "defamation") on the grounds that, to the extent that Defendant Coule made statements concerning Plaintiff, those statements were true and were not "published." In other words, those statements were made within the "defendant organizations" and not to third parties. (Doc. 6-1, p. 10-11). On one hand Defendant Coule argues that he, as a matter of law pursuant to a motion to dismiss, cannot be considered a state actor. Yet, on the other hand for the purpose of the alleged defamation claims he only spoke to other agents. While Defendant cites *Nida v. Echols*, 31 F.Supp.2d 1358, 1374, which held that "statements made by one corporate agent to another corporate agent, when the recipient of the information has a reason to receive the information, are deemed to have not been published." He also ignores Plaintiff's allegation that he did not disclose truthful information and that those disclosures were not made only to persons within AU and AUMC with reason to receive the information. (Doc. 6-1, p. 10-11). In fact, Plaintiff alleged that Defendant Coule "made **false** and malicious statements defaming Dr. Williams **to her coworkers and prospective employers, expressed in print and in writing**…" (Doc. 1-2, ¶ 237; *emphasis added*). She further alleged that he made "false and malicious statements…alleging that she abused alcohol…abused drugs…and was a threat to patient safety." (Id. ¶¶ 238-240). She also alleged that Defendant Coule "maliciously, willfully, intentionally or otherwise made statements and accusations that were **false**, in reference to her trade, office, or profession, calculated to injure her therein, and were detrimental to her good name and professional reputation…the statements were made **publicly to individuals who otherwise would not have heard such statements**…the statements were **wholly false**, baseless

and had a significant/detrimental impact on Dr. Williams' personal and professional reputation…[Defendant Coule] defamed Dr. Williams **through false statements** that she abused alcohol….abused drugs…[and] was a threat to patient safety." (Id. ¶¶ 245-250; *emphasis added*).

Plaintiff has clearly and plausibly pled the elements of libel and slander, to include, that Defendant Coule published false statements about her that harmed her in her profession. Therefore, Defendant Coule's motion to dismiss as it relates to Plaintiff's claims of defamation should be DENIED.

WHEREFORE, Plaintiff prays that the Court DENY, in its entirety, Defendant Coule's Motion to Dismiss Complaint.

Respectfully submitted this 17th day of August, 2020.

s/ Tanya D. Jeffords
Tanya D. Jeffords (GA Bar No: 390055)
Attorney for Plaintiff

Law Offices of Tanya D. Jeffords & Assoc., P.C.
437 Walker Street
Augusta, Georgia 30901
tjeffords@jeffordslaw.com
T: 706-722-3019 / F: 762-224-2946

UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF GEORGIA
AUGUSTA DIVISION

| | |
|---|---|
| DR. LESLEY WILLIAMS,<br><br>    Plaintiff,<br><br>v.<br><br>BOARD OF REGENTS OF THE UNIVERSITY SYSTEM OF GEORGIA d/b/a AUGUSTA UNIVERSITY, et al.,<br><br>    Defendants. | CASE NO. 1:20-cv-00100-JRH-BKE |

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that the foregoing was electronically filed with the Clerk of Court using the CM/ECF system which will send notification of such filing to all counsel of record, including:

Robert C. Threlkeld, Esq.
MORRIS, MANNING & MARTIN, LLP
rct@mmmlaw.com

Thomas L. Cathey, Esq.
tcathey@hullbarrett.com

Respectfully submitted this 17th day of August, 2020.

                                              s/ Tanya D. Jeffords
                                              Tanya D. Jeffords
                                              Attorney for Plaintiff
                                              GA Bar No: 390055