IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ROME DIVISION

DAVID HENEGAR,      |

      |

   Plaintiff,      |

      |

v.      |    CIVIL ACTION NO.

      |    4:18-cv-00192-HLM

GEORGIA CORRECTIONAL      |

HEALTH, et al.,      |

      |

   Defendants.      |

**BRIEF OF DEFENDANTS THE STATE OF GEORGIA, GEORGIA
CORRECTIONAL HEALTHCARE, AUGUSTA UNIVERSITY,
AUGUSTA UNIVERSITY HEALTH, AUGUSTA UNIVERSITY
MEDICAL CENTER, NICHOLS, LEWIS, McDADE, BURKE, LEE,
MELTON, BALLINGER, STROH, AND KEITH IN SUPPORT OF
THEIR MOTION TO DISMISS**

## I.    PLAINTIFF'S ALLEGATIONS[1] AND CLAIMS

Plaintiff was an inmate at Walker State Prison who had been
diagnosed with epilepsy. (Doc. 18, ¶ 1). The epilepsy could be controlled with
medication, but Plaintiff risked grand mal seizures without it. (*Id.*). For a
period of five days in August 2016, he did not receive his medication,
resulting in two seizures. (*Id.*, ¶ 2).

---

[1] Defendants do not concede that all of Plaintiff's allegations are accurate but
they acknowledge that his factual averments will be construed as true for
purposes of Rule 12(b)(6).

Plaintiff sues multiple "entities" he claims were responsible for providing medical services to inmates and several individuals—medical staff and security personnel—he contends failed to provide those services adequately. (*See generally* Doc. 18). He raises claims under the U.S. Constitution and Georgia law[2]. (*Id.*). Plaintiff does not state what relief he requests but as he is no longer incarcerated (*id.*, ¶ 6), these Defendants presume that he seeks money damages[3].

## II.  ARGUMENT AND CITATION OF AUTHORITY

### A.  GCHC, AU, AU Health, and AU Medical Center lack the capacity to be sued.

A non-individual, non-corporate party's capacity to be sued is determined "by the law of the state where the court is located." Fed.R.Civ.P. 17(b)(3). AU Medical Center is a hospital in Augusta operated by AU Health. AU Health and GCHC are themselves subdivisions of AU. AU is a unit of the University System of Georgia. None of these is capable of being sued. "The government, control, and management of the University System of Georgia and all of the institutions in said system shall be vested in the Board of

---

[2] Presumably, Count V—"Respondeat Superior,"—is a state-law claim. *See Polk County v. Dodson*, 454 U.S. 312, 325 (1981) ("Section 1983 will not support a claim based on a *respondeat superior* theory of liability").

[3] Eighth Amendment claims for equitable relief become moot when the inmate is released. *Spears v. Thigpen*, 846 F.2d 1327, 1328 (11th Cir. 1988).

Regents of the University System of Georgia." Ga. Const., art. VIII, § IV, ¶ I(b); *accord* O.C.G.A. § 20-3-51. The BOR—not the units—holds "the power 'to sue and be sued, plead and be impleaded, answer and be answered unto'" with regard to the institutions it operates. *McCafferty v. Medical College of Ga.*, 249 Ga. 62, 65 (1982). These Defendants cannot sue or be sued. *Id.*

## B. Plaintiff fails to state a claim against these Defendants.

In considering a motion to dismiss for failure to state a claim, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Id.*; *see also Amer. Dental Assoc. v. Cigna Corp.*, 605 F.3d 1283, 1290 (11th Cir. 2010) ("eliminate any allegations in the complaint that are merely legal conclusions"); *Oxford Asset Mgmt. v. Jaharis*, 297 F.3d 1182, 1188 (11th Cir. 2002) ("conclusory allegations, unwarranted deductions of facts or legal conclusions masquerading as facts will not prevent dismissal").

"[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—that the pleader is entitled to relief." *Iqbal*, 556 U.S. at 679. Complaints "must now contain either direct or inferential allegations

3

respecting all the material elements necessary to sustain a recovery under some viable legal theory." *Randall v. Scott*, 610 F.3d 701, 707 n.2 (11th Cir. 2010). Plaintiff fails to state a claim.

    1.    *Plaintiff fails to state a federal claim (Counts I, II, and III) against these Defendants.*

        a.    *Plaintiff's claims against GCHC, AU, AU Health, and AU Medical Center are barred.*

            i.    *Plaintiff's federal claims against the State "entity" Defendants are barred by the Eleventh Amendment.*

The Eleventh Amendment bars actions against a State or its agencies, departments or officials, absent a waiver by the State or a valid congressional override, when the State is the real party in interest or when any monetary recovery would be paid from State funds. *Kentucky v. Graham*, 473 U.S. 159, 169 (1985); *see also Pennhurst State School and Hospital v. Halderman*, 465 U.S. 89, 100-01 (1984). The immunity provided by the Eleventh Amendment applies both to states and to those entities that are "arms of the state." *See*, *e.g.*, *Fouche v. Jekyll Island State Park Auth.*, 713 F.2d 1518, 1520 (11th Cir. 1983). Congress did not intend for § 1983 to disturb the immunity to States provided by the Eleventh Amendment and alter the federal-state balance. *Will v. Mich. Dep't of State Police,* 491 U.S. 58, 65 (1989).

GCHC, AU, AU Health, and AU Medical Center have not consented to be sued under 42 U.S.C. § 1983. The Georgia Constitution provides that "[n]o waiver of sovereign immunity . . . shall be construed as a waiver of any immunity provided to the state or its departments, agencies, officers, or employees by the United States Constitution." Ga. Const. Art. 1, § 2, ¶ 9(f). Therefore, these Defendants have not waived the immunity provided to them under the Eleventh Amendment and Plaintiff's federal claims for money damages against them fail as a matter of law.

    ii.   *The State "entity" Defendants are not "persons" amenable to suit under § 1983.*

The specific language of § 1983 allows plaintiffs to sue only "person[s]" who violate their civil rights. 42 U.S.C. § 1983. In interpreting this statute, federal courts have clearly ruled that neither a state governmental entity nor a state governmental official acting in his official capacity is a "person" within the meaning of § 1983. *Will,* 491 U.S. at 71. The statutory language of 42 U.S.C. § 1983 "creates no remedy against a State." *Arizonans for Official English v. Ariz.*, 520 U.S. 43, 69 (1997).

To the extent that Plaintiff sues the GCHC, AU, AU Health, or AU Medical Center, he sues the State of Georgia. The State, however, is not a

person under § 1983, and, thus, cannot be a defendant in a § 1983 action. Accordingly, Plaintiff fails to state a claim against them.

> b. *Plaintiff fails to state a claim against Defendants Nichols, Lewis, McDade, Burke, Lee, Melton, Ballinger, Stroh, and Keith.*
>
> i. *Plaintiff fails to state an Eighth Amendment medical claim (Counts I and III[4]).*

"A prison official's 'deliberate indifference' to a substantial risk of serious harm to an inmate violates the Eighth Amendment." *Farmer v. Brennan*, 511 U.S. 825, 828 (1994). "Supervisory officials may not be held liable under section 1983 for the acts of their subordinates under a theory of respondeat superior or vicarious liability." *Hartley v. Parnell*, 193 F. 3d 1263, 1269 (11th Cir. 1999).

Deliberate indifference to an inmate's serious medical needs violates the Eighth Amendment. *Estelle v. Gamble*, 429 U.S. 97, 104 (1976). To state a claim for inadequate medical treatment, a plaintiff must aver acts or omissions sufficiently harmful to evidence "deliberate indifference to a serious medical need." *Id.*, at 106. Medical malpractice, misdiagnosis, accidents, and poor exercise of medical judgment do not rise to the level of deliberate indifference. *Id.* at 104-07. Although inmates are entitled to

---

[4] Count III is not meaningfully different from Count I. The analysis here applies equally to Count III.

"minimally adequate" medical care, "it is not required that the medical care provided to [inmates] be perfect, the best obtainable, or even very good." *Harris v. Thigpen*, 941 F.2d 1495, 1504, 1510 (11th Cir. 1991). "Where a prisoner has received . . . medical attention and the dispute is over the adequacy of treatment, federal courts are generally reluctant to second guess medical judgments." *Hamm v. DeKalb County*, 774 F.2d 1567, 1575 (11th Cir. 1985).

"Prison officials who are not medical professionals may 'rely on the decisions of trained professionals concerning the medication and care to be given inmates.'" *Nair v. Sikes*, 1996 U.S. Dist. LEXIS 20907, 8 (N.D. Ga. 1996) (*quoting Waldrop v. Evans*, 681 F.Supp. 840 (M.D. Ga. 1988)); *see also Lee v. Young*, 533 F.3d 505, 511 (7th Cir. 2008) ("in determining the best way to handle an inmate's medical needs, prison officials who are not medical professionals are entitled to rely on the opinions of medical professionals"); *Spruill v. Gillis*, 372 F.3d 218, 236 (3rd Cir. 2004) ("[i]f a prisoner is under the care of medical experts . . . , a non-medical prison official will generally be justified in believing that the prisoner is in capable hands"); *Royal v. Bassett*, 2008 U.S. Dist. LEXIS 99405, 21 (W.D. Va. 2008) ("[s]upervisory prison officials are entitled to rely on the professional judgment of trained medical personnel"); *Harrison v. Washington*, 2005 U.S. Dist. LEXIS 19209, (S.D. Ga.

2005) (warden was entitled to judgment because "he properly relied on the opinion of trained physicians").

Each Defendant must be judged individually and on the basis of what that he or she actually knew. *Burnett v. Taylor*, 533 F.3d 1325, 1331 (11th Cir. 2008); *see also Iqbal*, 556 U.S. at 677 ("each Government official, his or her title notwithstanding, is only liable for his or her own misconduct"). Accordingly, Plaintiff's factual averments as to the specific Defendants are analyzed individually.

*Drs. Nichols and Lewis*:  There is no suggestion that either Nichols or Lewis had personal knowledge of Plaintiff's illness or the state of his pill supply. (*See generally* Doc. 18).  Instead, they are sued simply because they sit atop the pyramid providing medical services in Georgia's prisons.  This is not permitted. *Hartley*, 193 F.3d at 1269.

A supervisor may be found liable when (1) he or she "personally participates" in the unconstitutional conduct; or (2) "there is a causal connection between the actions of a supervising official and the alleged constitutional deprivation." *Cottone v. Jenne*, 326 F.3d 1352, 1360 (11th Cir. 2003).  A causal connection is shown when (1) the supervisor was on notice, by a history of widespread abuse, of the need to correct a practice that led to the alleged deprivation, and he then failed to do so; (2) the supervisor's policy

8

or custom resulted in deliberate indifference; (3) the supervisor directed the subordinate to act unlawfully; or (4) the supervisor knew the subordinate would act unlawfully and failed to stop the unlawful action. *Id.* "The deprivations that constitute widespread abuse sufficient to notify the supervising official must be obvious, flagrant, rampant and of continued duration, rather than isolated occurrences." *Hartley v. Parnell*, 193 F.3d 1263, 1269 (11th Cir. 1999) (internal quotation marks omitted).

Plaintiff makes conclusory statements about policies and practices but avers no meaningful actual facts. *See Oxford Asset Mgmt.*, 297 F.3d at 1188 ("conclusory allegations, unwarranted deductions of facts or legal conclusions masquerading as facts will not prevent dismissal"). He does refer to two prior alleged incidents but those involved the treatment of infections, not the provision of chronic care medication.[5] (Doc. 18, ¶ 61). Moreover, two incidents amount to "isolated occurrences," not the "obvious, flagrant, rampant" violations required for liability to attach to supervisory officials.

---

[5] The infection cases also took place at different prisons, and thus, involved different medical and security staff. The leg infection case, *Tarver v. McLaughlin*, 5:14cv214 (M.D. Ga.), arose at Macon State Prison. The infected tattoo case, *Davison v. Nicolou*, 6:16cv39 (S.D. Ga.), arose at Georgia State Prison. The Court may take judicial notice of other cases and the filings made therein. *Horne v. Potter*, 392 Fed. Appx. 800, 802 (11th Cir. 2010).

*Hartley*, 193 F.3d at 1269.  Plaintiff does not allege a constitutional violation by either of these two doctors.

*Warden Ballinger*:  As with these doctors, there is no factual averment—just conclusory allegations—indicating that Warden Ballinger had the required actual knowledge that would create in her any obligation to act.  *Hartley*, 193 F.3d at 1269.  Moreover, as a non-medically trained person, she was entitled to rely on the medical staff.  *Nair*, 1996 U.S. Dist. LEXIS 20907 at 8.

*Dr. Burke*:  Plaintiff  has  little  to  say  about  Dr.  Burke,  the  "medical supervisor"  at  the  prison.    Burke  "was  responsible  for  writing  inmates' prescriptions and approving medications."  (Doc. 18, ¶ 18).  Burke "could have authorized  medical  or  corrections  staff  to  give  Mr.  Henegar  Dilantin  from another inmate's supply, but he did not."  (*Id.*, ¶ 37).  In other words, Burke (a) had some sort of supervisory authority and (b) chose not to harm another inmate.  This is not deliberate indifference.

*Nurse McDade*:  McDade was "the nursing medical supervisor" at the prison.  (Doc. 18, ¶ 17).  As with the other supervisory officials above, however, there is  no  factual  showing  that  McDade  was  aware  of  any  sort  of  widespread problems creating any knowledge of any constitutional violation or any obligation  to  remedy  one.    The  only  other  averments  concerning  Nurse McDade  are  that,  after  Plaintiff's  second  seizure,  correctional  officers

contacted her and she told them that, rather than calling an ambulance, they should take Plaintiff to medical to see a nurse. (*Id.*, ¶ 38). Even if, in hindsight, this is construed to have been imperfect medical advice, it is not deliberate indifference. *See Hamm*, 774 F.2d at 1575 ("Where a prisoner has received . . . medical attention and the dispute is over the adequacy of treatment, federal courts are generally reluctant to second guess medical judgments").

*Nurse Lee*: Lee conducted daytime pill calls on August 26 to 31. (Doc. 18, ¶ 20). Starting on August 27, Plaintiff's Dilantin was not available. (*Id.*, ¶ 27). Nothing in the complaint, however, indicates that Nurse Lee had the authority to prescribe medication. *See* O.C.G.A. § 43-34-25 (providing some authority to "advanced practice registered nurses" only).

Beyond that, Nurse Lee only encountered Plaintiff after he had had his second seizure. (Doc. 18, ¶ 49). Lee assessed Plaintiff, gave him oxygen, contacted a physician and then followed the physician's instruction to call an ambulance. (*Id.*, ¶¶ 49-50). In other words, Lee did what she should have done. This is cannot be basis of liability.

*Nurse Melton*: Melton conducted daytime pill call until August 23. (*Id.*, ¶ 30). On the 23rd, she noted on Plaintiff's chart that his Dilantin prescription would run out in three days and that more had been ordered. (*Id.*, ¶ 32).

11

Nurse Melton did her job properly.  There is no factual averment indicating otherwise.

*Lt.  Stroh and Sgt. Keith*:  These officers had some responsibility for the night time pill call.  (*Id.*, ¶¶ 22-23).  Plaintiff avers that they "and a third officer" conducted those pill calls from August 23 to August 31, but the only indication that one of the defendant officers was involved on the nights that Plaintiff's pills were not available (August 27-31) are that Stroh noted the unavailability in a log on the first day that the pills were not there.  (*Id.*, ¶¶ 31, 34-35).  In other words, the factual averments assert that only that Stroh did not give Plaintiff one pill several days before he had any seizure.

Once Plaintiff began to suffer seizures, the complaint alleges that Lt. Stroh and Sgt. Keith acted appropriately.  After the first seizure, they called a doctor and followed his instructions to call an ambulance.  (*Id.*, ¶¶ 39-40). After the second seizure, they took Plaintiff to medical and followed the instructions of nurses.  (*Id.*, ¶¶ 47-50).  "Prison officials who are not medical professionals may 'rely on the decisions of trained professionals concerning the medication and care to be given inmates.'"  *See Nair*, 1996 U.S. Dist. LEXIS 20907 at 8.

> ii. *Plaintiff fails to state a § 1983 conspiracy claim (Count II).*
>
> (a) *Any conspiracy claim is barred by the intra-corporate conspiracy doctrine.*

Under the intracorporate conspiracy doctrine, "a corporation's employees, acting as agents of the corporation, are deemed incapable of conspiring among themselves or with the corporation." *Dickerson v. Alachua County Comm'n*, 200 F.3d 761, 767 (11th Cir. 2000). This rule derives from "basic agency principles that attribute the acts of agents of a corporation to the corporation, so that all of their acts are considered to be those of a single actor." *Id.* (internal quotations omitted). Accordingly, "it is not possible for a single legal entity consisting of the corporation and its agents to conspire with itself, just as it is not possible for an individual person to conspire with himself." *Id.*

This doctrine also applies to governmental entities. *Id.* The Eleventh Circuit has repeatedly applied this doctrine to approve the rejection of civil rights conspiracy claims charging that a governmental body and its employees conspired with each other. *See, e.g., id.* at 770; *Denney v. City of Albany*, 247 F.3d 1172, 1190-91 (11th Cir. 2001).

The Defendants named in the conspiracy count (Count II) are state subunits and nine state employees.  As a matter of law, they cannot have conspired together.  Plaintiff's conspiracy claim is barred.

      (b)    *Plaintiff's factual averments do not allege a conspiracy.*

A § 1983 conspiracy claim requires:  (1) a violation of his federal rights; (2) an agreement to violate such rights; and (3) an actionable injury.  *Geidel v. City of Bradenton Beach*, 56 F.Supp.2d 1359, 1367 (M.D. Fla. 1999).  The Plaintiff "must show that the parties 'reached an understanding' to deny the plaintiff his or her rights."  *N.A.A.C.P. v. Hunt*, 891 F.2d 1555, 1563 (11th Cir. 1990) *quoting Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 152 (1970).  Conspiracy requires knowing participation, not just mere presence.  *See United States v. Lyons*, 53 F.3d 1198, 1201 (11th Cir. 1995) (criminal conspiracy decision).

These Defendants argue above that Plaintiff fails to allege a constitutional violation.  Even if such is stated, however, nothing in Plaintiff's factual averments shows that any two or more parties "'reached an understanding' to deny the plaintiff his or her rights."  *N.A.A.C.P.*, 891 F.2d at 1563.  Plaintiff fails to allege a conspiracy.

14

### iii. *Plaintiff fails to state a failure-to-intervene claim (Count III).*

Although some cases use the phrase "failure to intervene," they do so merely as another way of describing deliberate indifference. *See Brown v. Hughes*, 894 F.2d 1533, 1537 (11th Cir. 1990). It is not a separate claim from a deliberate indifference action. Count III, therefore, is redundant to Count I.

### iv. *Plaintiff's claims against these Defendants are barred by qualified immunity.*

Qualified immunity protects governmental defendants so long as their conduct "does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Vinyard v. Wilson*, 311 F.3d 1340, 1346 (11th Cir. 2002). The relevant question to be answered is the "objective (albeit fact specific) question," of whether a "reasonable officer" would have believed the defendant's action to be lawful in light of clearly established law and the information possessed by the defendant. *Anderson v. Creighton*, 483 U.S. 635, 641.

The public official must first show that he was acting within the scope of his discretionary authority when the allegedly wrongful acts occurred. *Vinyard*, 311 F.3d at 1346. The burden then shifts to the plaintiff to show that immunity is not appropriate. *Id.* To carry that burden, the plaintiff must show that the constitutional right asserted was clearly established at

the time the alleged violation occurred. *Hope v. Pelzer*, 536 U.S. 730, 739 (2002). To make this showing, a plaintiff must identify either (1) earlier case law from the Supreme Court, the Eleventh Circuit, or the Georgia Supreme Court that is materially similar to the instant case, and thus, provided clear notice of the asserted constitutional right; or (2) general rules of law that apply with obvious clarity to the circumstances, clearly establishing the unlawfulness of the defendant's conduct. *Long v. Slaton*, 508 F.3d 576, 584 (11th Cir. 2007). "'[O]bvious clarity' cases will be rare." *Coffin v. Brandau*, 642 F.3d 999, 1015 (11th Cir. 2011) (*en banc*).

"Public officials are not obligated to be creative or imaginative in drawing analogies from previously decided cases." *Hudson v. Hall*, 231 F.3d 1289, 1297 (11th Cir. 2000). "Government officials are not required to err on the side of caution when it comes to avoiding constitutional violations." *Crosby v. Monroe*, 394 F.3d 1328, 1334 (11th Cir. 2004) (internal quotations omitted). "[E]xisting precedent must have placed the statutory or constitutional question beyond debate." *Reichle v. Howards*, 132 S.Ct. 2088, 2093) (internal quotations and citation omitted).

These Defendants deny that they committed any constitutional violation. Even if they did, however, as shown above any such violation was

Case 4:18-cv-00093-HLM Document 45-1 Filed 10/18/18 Page 17 of 27

not clearly established in the late summer of 2016. Accordingly, these Defendants are entitled to qualified immunity.

> 2. *Plaintiff cannot proceed against these Defendants under state law (Counts IV, V, and VI).*
>
> > a. *This Court lacks jurisdiction over any state law claims against these Defendants.*

Jurisdiction is a threshold issue in every case. *Castleberry v. Goldome Credit Corp.*, 408 F.3d 773, 779 (11th Cir. 2005). "The party seeking to invoke the jurisdiction of a court has the burden of establishing that jurisdiction exists." *Tetco Metal Prods., Inc. v. Langham*, 387 F.2d 721, 723 (5th Cir. 1968). Plaintiff cannot do so here with respect to his state law claims against these Defendants.

As discussed above, the Eleventh Amendment bars actions against a State or its agencies, departments or officials when the State is the real party in interest or when any monetary recovery would be paid from State funds. *Graham*, 473 U.S. at 169. This immunity applies both to states and to those entities that are considered "arms of the state." *See, e.g., Fouche*, 713 F.2d at 1520; Ga. Const., art. VIII, § 4, ¶ 1(b); O.C.G.A. § 20-3-51. "[E]ach state is a separate sovereign, and each state, as a sovereign, cannot be haled into federal court without its consent." *Seminole Tribe of Fla. v. State of Fla. Dep't of Revenue*, 750 F.3d 1238, 1242 (11th Cir. 2014).

17

The Georgia Constitution specifically preserves the State's sovereign immunity from suit unless that immunity is waived by an Act of the Georgia General Assembly, and only on the limited terms and conditions set forth in such an Act. Ga. Const. Art. I, § II, ¶ IX (e). Accordingly, the General Assembly has provided that:

> The state waives its sovereign immunity only to the extent and in the manner provided in [the Georgia Tort Claims Act] and *only with respect to actions brought in the courts of the State of Georgia.* The state does not waive any immunity with respect to actions brought in the courts of the United States.

O.C.G.A. § 50-21-23(b) (emphasis added). A State's waiver of immunity in its own courts is not a waiver of its immunity in federal courts. *Johnsen v. Collins*, 875 F.Supp. 1571, 1575 (S.D. Ga. 1994). "Forum immunity is a jurisdictional immunity that shields a state from suit in federal court." *Stroud v. McIntosh*, 722 F.3d 1294, 1302 n. 3 (11th Cir. 2013).

The State of Georgia has not consented for itself, its entities or its officers and employees to be sued in federal court on any state law claims. No provision of the Georgia Code consents to a complaining party proceeding against the State or State entities in federal court. These Defendants therefore are immune from suit in federal court with regard to the state law claims asserted in this action.

      b.     *Plaintiff's claims against these Defendants are barred by the Georgia Tort Claims Act.*

Again, the Eleventh Amendment bars suit against a State or its agencies, departments or officials when monetary recovery would be paid from State funds.  *Graham*, 473 U.S. at 169.  The Georgia Constitution specifically preserves the State's sovereign immunity from suit unless that immunity is waived by an Act of the Georgia General Assembly, and only on the limited terms and conditions set forth in such an Act.  Ga. Const. Art. I, § II, ¶ IX (e).  Further, the Georgia Constitution provides that "[n]o waiver of sovereign immunity shall be construed as a waiver of any immunity provided to the state or its departments, agencies, officers, or employees by the United States Constitution."  Ga. Const. Art. I, §II, ¶ IX (f).

Historically, the State had complete sovereign immunity.  However, in 1990, the voters approved an amendment to Article I, Section II, Paragraph IX of the Georgia Constitution enabling the General Assembly to pass the Georgia Tort Claims Act (GTCA), which the General Assembly then did in 1992.  *Datz v. Brinson*, 208 Ga. App. 455, 455-56 (1993).  The General Assembly declared as a matter of public policy that "the state shall only be liable in tort actions within the limitations of this article and in accordance with the fair and uniform principles established in this article."  O.C.G.A.

§50-21-21 (a). As held by the Georgia Supreme Court, "[a] waiver of sovereign immunity is a mere privilege, not a right, and the extension of that privilege is solely a matter of legislative grace." *Riddle v. Ashe*, 269 Ga. 65, 67 (1998).

"Sovereign immunity is waived only in strict compliance with the [Georgia Tort Claims] Act." *Grant v. Faircloth*, 252 Ga. App. 795 (2001). "Implied waivers of the State's immunity are not favored." *Ga. Dep't of Veterans Services v. Robinson*, 244 Ga. App. 878, 879 (2001), *citing City of Atlanta v. Gilmere*, 252 Ga. 406, 409 (1984). Thus, if not waived expressly in the GTCA, there has been no waiver of sovereign immunity for the alleged state law tort claims. Accordingly, even if this action had been brought in state court, Plaintiff's state law claims would still be barred, as set forth below.

     i.    *State Officers Or Employees Acting Within The Course And Scope Of Their Official Duties Or Employment Are Immune From Suit in Tort*

Under the GTCA, "[a] state officer or employee who commits a tort while acting within the scope of his or her official duties or employment is not subject to lawsuit or liability therefor." O.C.G.A. § 50-21-25(a). This code section requires that a plaintiff "name as a party defendant only the state government entity for which the state officer or employee was acting and

shall not name the state officer or employee individually." O.C.G.A. § 50-21-25(b). Further, if an employee is sued for a tort committed while acting within the scope of employment, "the state government entity for which the state officer or employee was acting must be substituted as the party defendant." O.C.G.A. § 50-21-25(b).

In *Riddle*, 269 Ga. 65, the Georgia Supreme Court held that the immunity statute is constitutional and that the defendant state employee's motion to dismiss should have been granted, reversing the trial court's failure to do so. *Id.* at 65-67; *see also Shekhawat v. Jones*, 293 Ga. 468 (2013); *Hardin v. Phillips*, 249 Ga. App. 541, 543-45 (2001); *Ridley v. Johns*, 274 Ga. 241, 242-243 (2001); *Tootle v. Cartee*, 280 Ga. App. 428, 430-431 (2006); *Wang v. Moore*, 247 Ga. App. 666, 667-670 (2001); *Coultas v. Dunbar*, 220 Ga. App. 54, 57-58 (1996).

The pleadings here establish that the acts of Defendants Nichols, Lewis, McDade, Burke, Lee, Melton, Ballinger, Stroh, and Keith occurred within the scope of their official duties or employment for state government entities, namely the Department of Corrections and the Board of Regents. Because these Defendants were state officers or employees acting within the scope of their official duties or employment, they are immune from suit in tort. The sole defendants for the state law claims would be the state

government entities for which they were acting. O.C.G.A. § 50-21-25(b).
However, as set forth below, any state law claims against these agencies
would be subject to dismissal even if brought in state court.

ii.   *Plaintiff has failed to comply with O.C.G.A. § 50-21-26.*

Prior to filing suit, a claimant must provide ante litem notice to the
Risk Management Division ("RMD") of the Department of Administrative
Services ("DOAS") and send a copy to the targeted state government entity.
*See* O.C.G.A. § 50-21-26(a)(1) and (2). To that end, O.C.G.A. § 50-21-26(a)(3)
provides that "[n]o action against the state under this article shall be
commenced and courts shall have no jurisdiction thereof unless and until a
written notice of claim has been timely presented to the state as provided in
this subsection."

Further, not only must an ante litem notice be given, a copy of the
notice and a receipt reflecting its delivery must be attached as exhibits to the
Complaint:

> Any complaint filed pursuant to this article must
> have a copy of the notice of claim presented to the
> Department of Administrative Services together with
> the certified mail or statutory overnight delivery
> receipt or receipt for other delivery attached as
> exhibits. *If failure to attach such exhibits to the
> complaint is not cured within 30 days after the state*

> *raises such issue by motion, then the complaint shall*
> *be dismissed without prejudice.*

O.C.G.A. § 50-21-26(a)(4) (emphasis added).

In this case, Plaintiff appears to have presented no ante litem notice, and attached no receipt evidencing delivery of any notice to the RMD of the DOAS by a statutorily authorized method.   If a timely and compliant ante litem notice and its delivery to the RMD of the DOAS by one of the mandated methods is not attached by amendment to the pleadings within 30 days, any state law claims must be dismissed. *See Baskin v. Georgia Dep't of Corrections*, 272 Ga. App. 355, 356-359 (2005).

### iii.  *Plaintiff has not complied with O.C.G.A. § 50-21-35.*

The service of process and mailing provisions for tort actions against state government entities are that claimants must: (1) cause process to be served upon the chief executive officer of the state government entity; and (2) cause process to be served upon the director of the RMD of DOAS.   In addition, the claimant must mail a copy of the Complaint to the Attorney General in a specified manner, and attach a certificate to the Complaint that this requirement has been met.  O.C.G.A. § 50-21-35.  The Georgia Court of Appeals has confirmed that service of process upon the RMD director of DOAS is necessary to perfect service of process upon state government

entities in tort actions. *See Sylvester v. Georgia Dep't of Transp.*, 252 Ga. App 31, 32-33 (2001); *Green v. Cent. State Hosp.*, 275 Ga. App. 569, 571 (2005). In addition, the Georgia Supreme Court has confirmed that the requirement for mailing the complaint to the Attorney General is mandatory ("The statute demands that a copy of the complaint be sent to the Attorney General as soon after filing as possible"), though the Court allowed that in some circumstances this requirement may be accomplished by amendment. *See Camp v. Coweta County*, 280 Ga. 199, 203-204 (2006).

Here, the requirements of O.C.G.A. § 50-21-35 have not been met.

c.    *Plaintiff fails to state an indemnification claim against the State of Georgia.*

Plaintiff is correct that the Georgia Department of Administrative Services carries insurance that might well cover this action and likely would pay any judgment Plaintiff might obtain in this matter. For the reasons argued above concerning the Eleventh Amendment and sovereign immunity, however, Plaintiff cannot sue the State directly to obtain those monies, whether in federal or state court. Additionally, there simply is no such direct cause of action under Georgia law under the circumstances presented here. *See*, *e.g.*, *McGill v. Am. Trucking & Transp. Inc. Co.*, 77 F.Supp.3d 1261, 1264-65 (N.D. Ga. 2015).

## III. CONCLUSION

For the foregoing reasons, these Defendants submit that this Court should grant their motion to dismiss.

Respectfully submitted this 18th day of October, 2018.

> CHRISTOPHER M. CARR   112505
> Attorney General
>
> KATHLEEN M. PACIOUS 558555
> Deputy Attorney General
>
> /s/ Susan E. Teaster
> SUSAN E. TEASTER  701415
> Senior Asst. Attorney General
>
> /s/ Laura L. Lones
> LAURA L. LONES 456778
> Senior Assistant Attorney General
>
> Attorneys for Defendants GCHC, AU, AU Health, AU Medical Center, Nichols, Lewis, McDade, Burke, Lee, Melton, Ballinger, Stroh, and Keith

Please Serve:
LAURA L. LONES
Assistant Attorney General
Department of Law, State of Georgia
40 Capitol Square, S.W.
Atlanta, Georgia  30334-1300
Telephone: (404) 463-8850
Facsimile:  (404) 651-5304
E-mail: llones@law.ga.gov

# CERTIFICATION AS TO FONT

Pursuant to Local Rule 7.1D, I hereby certify that this brief is submitted in Century Schoolbook 13 point type as required by Local Rule 5.1(b).

/s/ Laura L. Lones
LAURA L. LONES 456778
Senior Assistant Attorney General

## CERTIFICATE OF SERVICE

I hereby certify that on this day, I electronically filed **BRIEF OF DEFENDANTS THE STATE OF GEORGIA, GEORGIA CORRECTIONAL HEALTHCARE, AUGUSTA UNIVERSITY, AUGUSTA UNIVERSITY HEALTH, AUGUSTA UNIVERSITY MEDICAL CENTER, NICHOLS, LEWIS, McDADE, BURKE, LEE, MELTON, BALLINGER, STROH, AND KEITH IN SUPPORT OF THEIR MOTION TO DISMISS** with the Clerk of Court using the CM/ECF system which will automatically send email notification of such filing to counsel of record:

Zack Greenamyre
Mitchell & Shapiro LLP

Arthur Loevy
Mike Kanovitz
Rachel Brady
Loevy & Loevy

Aaron P.M. Tady
Coles Barton LLP

Cara Weiner
Spears Moore Rebman & Williams

Tracy Marie Morgan
Weathington McGrew P.C.

This 18th day of October, 2018.

/s/ Laura L. Lones
Georgia Bar No. 456778
Senior Assistant Attorney General